IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION


**ROBERT LEE LEGG, JR.,**

        **Plaintiff,**

**v.**                                  **Case No. 3:20-cv-00778**

**PUTNAM CO. SHERIFF OFFICE;**
**WESTERN REGIONAL JAIL;**
**PRIM CARE MEDICAL STAFF; and**
**OFFICER ROMAN,**

        **Defendants.**


### PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

On November 30, 2020, Plaintiff Robert Lee Legg, Jr., ("Legg"), proceeding *pro se*, and incarcerated at the Western Regional Jail and Correctional Facility in Barboursville, West Virginia ("WRJ"), filed a complaint against the defendants under 42 U.S.C. § 1983. (ECF No. 2). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending are the following:

1.    Legg's amended Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 12);

2.    Legg's Response to Show Cause Order; (ECF No. 13);

3.    Legg's Motion for Appointment of Counsel, (ECF No. 14); and

4.     Legg's Motion Granting Full Immunity, (ECF No. 15).

Having thoroughly considered Legg's various submissions, the undersigned **FINDS** as follows: (1) the complaint fails to state a claim upon which relief may be granted; (2) Legg has failed to comply with the Court's Orders instructing him to amend his complaint to state plausible claims; (3) Legg's Response to Show Cause Order fails to comply with the directives in the Show Cause Order; (4) Legg's Motion for the Appointment of Counsel should be denied for the reasons previously provided to Legg; (5) Legg's request for immunity in his state court actions are not cognizable in an case brought under 42 U.S.C. § 1983; and (6) Legg's amended Application to Proceed Without Prepayment of Fees and Costs should be denied as moot, because his complaint cannot sustain initial review. Therefore, the undersigned **DENIES** Legg's amended Application to Proceed *in forma pauperis*, (ECF No. 12), **DENIES** Legg's Motion for the Appointment of Counsel, (ECF No. 14), and **RECOMMENDS**, for the following reasons, that the presiding District Judge **DENY** the Motion Granting Full Immunity, (ECF No. 15), **DISMISS** the complaint, without prejudice**,** and **REMOVE** this matter from the docket of the Court.

## I.    <u>Relevant Facts</u>

As stated, Legg filed a complaint in November 2020, alleging that on August 31, 2020, he was walking away from "a long night in Hurricane, WV" when he fell and broke his leg.  (ECF No. 2 at 4). An officer from the Putnam County Sheriff's Office drove Legg to the hospital, allegedly videotaped Legg while he was on medication, and took a ring belonging to Legg. Legg claimed that he was forced to leave the hospital before he was stable and was made to ride around for hours in the officer's cruiser for the officer's amusement. Legg stated that he was then taken to the WRJ and was placed in the

medical unit. (*Id.*) Although he told Prime Care personnel that he had medication allergies, they gave him a sulfa drug and Benadryl, which caused him to suffer an adverse reaction. Legg contended that he drank cold water, which put him in shock, and "if it wasn't for [him] being a CPR and a traind [sic] person" he would have died. (*Id.*). Legg alleged that, in September or October, he was taken to a general population pod at the WRJ. At the time, he was using a walker to ambulate, and he fell a couple of times. (*Id.* at 5). He was assigned to a top tier cell and was given a top bunk despite his broken leg. Ultimately, Legg was taken to suicide housing by Officer Roman, who told other inmates that he was taking Legg to a special housing unit because Legg was a baby rapist. (ECF No. 2 at 5).

For relief, Legg requested "proper meetings" and "seminars" to address his statement of facts; a reprimand of the Putnam County officer that filmed him and took his ring at the hospital; termination of Officer Roman's employment for making false and dangerous statements about Legg; and compensatory damages for his pain, suffering, and embarrassment, as well as compensation for the potential risk to his safety caused by Officer Roman's statements. (*Id.* at 5-6). Legg attached a handwritten document to his complaint that contained disjointed thoughts, rendering it incomprehensible. (*Id.* at 8-9). In that document, Legg asked to be allowed to join the Army.

On December 1, 2020, the Court issued a Memorandum Opinion and Order, advising Legg that his complaint failed to state a cognizable claim and providing him with thirty days in which to amend the complaint. (ECF No. 5). The Court explained in detail the relevant standards, the deficiencies in Legg's complaint, and how to correct them. The following day, Legg filed a supplemental document, in which he explained

that he had been involved with "bad" people and was trying to protect his child by doing what he did. (ECF No. 6). That document was followed on January 4, 2021 with a request from Legg that he be moved to South Central Regional Jail, or be placed on GPS monitoring, or be admitted to a long term rehabilitation/transitional living program. (ECF No. 10). Plaintiff did not, however, abide by the Court's Order and amend his complaint.

Consequently, on January 12, 2021, the Court entered a Show Cause Order. (ECF No. 11). In the Order, the Court reminded Legg that he still needed to amend his complaint and correct the deficiencies in the pleading. Legg was given another thirty days to make the corrections and was advised that a failure to do so would result in a recommendation of dismissal. (*Id.*). According to the docket, Legg received a copy of the Show Cause Order.

Legg filed a response to the Show Cause Order on January 22, 2021. (ECF No. 13). Legg's response included a variety of complaints not stated in his original pleading— for example, that he was not being given adequate stationery and was being denied recreation time. (*Id.* at 2). He stated that he wanted to be placed in protective custody, but instead was on quarantine in a COVID-19 section of the WRJ. Legg indicated that the WRJ was tampering with his mail; that someone at the WRJ took Legg's boots and Flash Gordon wallet from property storage; and that he was not read his rights when he was taken by ambulance to the hospital. (*Id.* at 3). Legg states that Paula and Billy were the Prime Care employees who knew about his medication allergies, and Nurse Ally was the one who entered Benadryl in the allergy section of his records. Legg added that he was in the process of filing grievances related to his recreation time and that he spoke with Captain Diamond about important matters that need to be discussed with the

4

Department of Homeland Security. (*Id.* at 4). Although Legg provided some additional information regarding the names of the Prime Care employees, his response to the Show Cause Order did not include any factual allegations to support the claims contained in his complaint. Instead, he made conclusory statements devoid of detail, most of which touched on unrelated criticisms of his conditions of confinement.

## II.    <u>Screening Standard</u>

Pursuant to the provisions of 28 U.S.C. § 1915, a court must screen each case in which a prisoner seeks to proceed *in forma pauperis*. The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant "who is immune from such relief." 28 U.S.C. § 1915. A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 504 U.S. 25 (1992). Likewise, a complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), stating that the Court is required to accept as true the factual allegations asserted in the complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as . . . factual allegation[s]." *Id.* at 678 (quoting *Bell Atlantic* Corp, 550 U.S. at 554). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

Legg has filed his complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for her, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.    Discussion

#### A.    The Complaint Fails to State Viable Claims Against the Defendants

Legg's complaint is brought under 42 U.S.C. § 1983. Section 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." To state a cause of action under § 1983, a plaintiff must allege facts showing that: (1) an official deprived the plaintiff of a federally protected civil right, privilege or immunity and (2) that the official did so under color of State law. 42 U.S.C. § 1983; *see also Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792 (D.S.C. Sept. 8, 2010). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, for an official to be liable under § 1983, it must be

"affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (*quoting Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D. Md. 1971)).

### 1. The WRJ Must be Dismissed as it is Immune from Liability

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Legg sues the WRJ, a West Virginia correctional facility. Therefore, as a preliminary matter, the undersigned must determine whether the WRJ is an agency,

7

official, or other arm of the State of West Virginia entitled to Eleventh Amendment immunity. The answer is clear, as the law is well settled that state correctional facilities, such as the WRJ, are arms of the State of West Virginia. *See Hall v. Pszczolkowski*, No. 5:14CV150, 2015 WL 6742107, at *3 (N.D.W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished per curiam)); *see, also, Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at *1, *4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting the finding that the WRJ is arm of the State for Eleventh Amendment purposes). Accordingly, the undersigned **FINDS** that the WRJ is entitled to sovereign immunity from suit under the Eleventh Amendment.

Having determined that the WRJ is entitled to sovereign immunity, the undersigned must consider whether dismissal of the WRJ is precluded by an exception to immunity. Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016)

(holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia has not waived its sovereign immunity in federal cases brought pursuant to § 1983, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will v. Mich. Dept. of State Police*, the Supreme Court concluded that Congress did not have the states in mind as potential defendants when it imposed liability on "persons" under § 1983. *Id.,* 491 U.S. 58, 65 (1989). Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include states as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its

9

legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the WRJ is not a state officer, but rather a state entity or agency, the third exception to Eleventh Amendment immunity is likewise inapplicable. *Lee-Thomas v. Prince*

*George's Cty. Public Schools*, 666 F.3d 244, 249 (4th Cir. 2012) (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

In sum, since none of the exceptions apply, the undersigned **FINDS** that the WRJ is shielded by the Eleventh Amendment's sovereign immunity from Legg's § 1983 complaint and should be dismissed on that ground.

### 2. Legg Fails to State a Viable Claim Against the Sheriff's Deputy

With respect to Legg's allegations against the unidentified officer from Putnam County, Legg's complaint simply does not state a claim of constitutional dimension. Legg asserts that the officer videotaped Legg in the hospital, took his ring, and forced him to ride in the officer's cruiser. Legg provides no other information about these events. Thus, the officer's act of videotaping Legg, standing alone, does not establish a constitutional violation. Obviously, there are instances in which law enforcement officers properly videotape other individuals. Indeed, officers are expected to use body cameras when interacting with suspects and responding to calls. They often videotape interviews with witnesses and persons of interest. A review of Legg's complaint suggests that he was arrested and taken by the officer to the hospital and from there to the WRJ.[1] From these

---

[1] A news article published on August 31, 2020 by WCHS Channel 8 reported that Legg allegedly stole $500 from a Sheetz in Teays Valley, West Virginia, and fled the scene in a white Nissan, which Legg later crashed while trying to access the interstate through a subdivision. *See* https://wchstv.com/news/local/putnam-robbery-suspect-arrested. He attempted to run from the wrecked vehicle, but fell from a seven-foot retaining wall and broke his leg. Two hours later, he was located by law enforcement officers and taken to

limited facts, the Court cannot infer more than the mere possibility of misconduct by the officer in videotaping Legg. As such, the undersigned **FINDS** that the complaint does not include a plausible claim against the officer based on his alleged videotaping of Legg.

The same is true concerning Legg's allegation that the officer, for amusement, drove Legg around for hours in a police cruiser. According to his own complaint, Legg needed to be seen at the hospital and then needed to be transported from the hospital to the WRJ. When an individual is in police custody and needs to be transported from one location to another—particularly to a location that is miles away— the officer responsible for the transport generally uses a police cruiser. As such, the Court **FINDS** that it cannot reasonably infer that the officer drove Legg in a police cruiser for the purpose of entertainment.

Similarly, Legg provides only skeletal factual assertions in his complaint regarding the loss of his ring. Legg accuses the officer of stealing the ring when Legg was receiving treatment at the hospital. However, Legg does not state whether he has taken any steps to find and retrieve the ring, or has reported its loss through available state channels. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Nevertheless, Legg cannot maintain a due process claim in federal court when there are meaningful post-deprivation procedures in place in the State of West Virginia. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the

---

the hospital. *Id.* Legg was subsequently booked into the WRJ on September 4, 2020. *See* apps.wv.gov/OIS/Offender Search/RJA/Offender.

Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *and Parratt v. Taylor,* 451 U.S. 527, 541–44 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327, 330–31 (1986). Here, Legg has the ability to file a state court claim or an administrative claim for loss of his ring, and these avenues have been held to constitute meaningful post-deprivation remedies. *See Kidd v. Bradley*, 578 F. Supp. 275, 276–77 (N.D.W. Va. 1984). As explained in *Kidd*:

> Under the common law of West Virginia, "[t]he tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is ... a conversion of the property for which ... [a cause of action] will lie." The common law likewise recognizes a cause of action for the negligent deprivation of, or injury to, one's personal property rights. Inasmuch as these common law actions provide the Plaintiff at bar with an adequate post-deprivation remedy, the Court finds that the Plaintiff has not stated a cause of action under Section 1983.

*Id.* (citations omitted); *see, also, Goodman v. Ramey*, No. CIV.A. 2:12-0439, 2012 WL 5966642, at *4 (S.D.W. Va. Nov. 29, 2012) (holding that an inmate failed to state a constitutional claim for the loss of his property when he could have challenged the taking "in a garden-variety tort claim in state court."); *Cooper v. Wright*, No. 7:15CV00572, 2016 WL 7165994, at *4 (W.D. Va. Dec. 6, 2016) (holding that prisoner failed to demonstrate that post-deprivation remedies were not available when grievance procedures addressed the issue).

Put simply, Legg's complaint about the loss of his ring (and later, the loss of his wallet and boots) is not correctly asserted in this federal court case, because he has available and adequate state court remedies. For instance, Legg may file a claim with the West Virginia Legislative Claims Commission or a tort action in state court. Consequently, with state remedies available to Legg, the undersigned **FINDS** that Legg fails to state a claim against the Putnam County Sheriff's deputy.

### 3.  Legg Fails to Allege Any Injury Related to Challenged Actions at the WRJ

As to Legg's claims against Officer Roman and other correctional facility staff, the Eighth Amendment to the United States Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Thus, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, this prohibition "does not mandate comfortable prisons, and only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (*quoting Rhodes,* 452 U.S. at 347).

In order for Legg to state a plausible claim that the actions of correctional facility staff violated the Eighth Amendment, he must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison officials had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d

756, 761 (4th Cir. 1996)). To satisfy the objective component, Legg must establish that the challenged condition caused or constituted an extreme deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Legg] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler v. Waters*, 989 F.2d 1375, 1370–80 (4th Cir. 1993)).

To fulfill the subjective component, Legg must demonstrate a "deliberate indifference" to his health or safety by the correctional officers. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012). In other words, the correctional officers had a sufficiently culpable state of mind if they were aware of an excessive risk of harm to Legg's health or safety, but chose to disregard it. *See Wilson*, 501 U.S. at 298; *Brown v.*

*North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)) ("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.*"*). A prison official is not liable under the Eighth Amendment if a reasonable response is made, "even if the harm ultimately [is] not averted." *Odom v. South Carolina DOC,* 349 F.3d 765, 770 (4th Cir. 2003) (*citing Farmer,* 511 U.S. at 844).

In his complaint Legg alleges that, considering his broken leg, he was improperly assigned to a top bunk in a top tier cell. Legg does not identify the prison official who assigned him to that bunk and cell. He also complains that Officer Roman made untrue statements about him, which were hurtful and placed him at risk of harm. Legg does not articulate any injury resulting from either of these alleged wrongdoings.

Legg's claims are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody **without a prior showing of physical injury**." (emphasis added). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" referenced by the Act need not be significant, but it must be more than *de minimis. See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F. Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the

plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)) (internal quotation marks omitted). As indicated, Legg has not identified the individual at the WRJ who placed him in the top tier, top bunk cell, but he likewise has failed to include any allegations that he suffered an injury as a consequence of his cell placement.

Moreover, the verbal abuse of inmates by correctional officers, without more, does not give rise to a constitutional claim under § 1983. *See Tokley v. Ratliff,* No. CIV A 707CV00109, 2007 WL 1046955, at *1 (W.D. Va. Apr. 3, 2007) (citing *Morrison v. Martin,* 755 F. Supp. 683, 687 (E.D.N.C. 1990); *also Owens v. Vanmeter,* No. CIV.A. RWT-09-1780, 2010 WL 817315, at *5 (D. Md. Mar. 4, 2010) ("The use of racist epithets, while offensive, is not actionable under 42 U.S.C. § 1983.") (collecting cases); *Keyes v. City of Albany,* 594 F.Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); *Burdos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("threats and offensive language are not actionable under § 1983"); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that verbal taunts and racial slurs do not give rise to liability under § 1983); *Haywood v. Gifford*, No. 1:17-CV-398, 2017 WL 5633316, at *4 (S.D. Ohio Oct. 4, 2017), *report and recommendation adopted,* No. 1:17-CV-398, 2017 WL 5598167, at *4 (S.D. Ohio Nov. 21, 2017) ("[I]t is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.") (citing *Wingo v. Tennessee Dep't of Corp.*, 499 Fed. Appx. 453, 455 (6th Cir. 2012)); *Black Spotted Horse v. Else,* 767 F.2d 516, 517 (8th Cir. 1985) (holding that the use of racially offensive

language in dealing with a prisoner does not, by itself, state a constitutional claim); *and Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (noting that verbal harassment or abuse is not sufficient to state a § 1983 claim). Legg has not alleged that Officer Roman's words resulted in a physical injury, or even a serious threat of injury, to Legg. Consequently, the undersigned **FINDS** that Legg has failed to state a plausible claim against the WRJ staff that assigned him a top tier, top bunk cell, or against Officer Roman.

### 4.  Legg Fails to State Deliberate Indifference by Prime Care Staff

The medical providers employed by Prime Care are obligated under the Eighth Amendment to provide treatment when an inmate has a serious medical need. Prime Care staff violate this constitutional mandate when they respond to an inmate's serious medical need with deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To state a cognizable Eighth Amendment claim based on the failure to provide medical care, an inmate must first demonstrate the existence of a medical condition or need that is objectively serious. *Id.* A medical condition is serious under the Eighth Amendment when it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would understand that medical attention is necessary. *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need may also be shown by the presence of a medical condition that significantly affects the prisoner's daily activities or causes chronic and substantial pain. *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992); *see also Adams v. Southwest Virginia Regional Jail Authority*, 524 Fed. Appx 899, 900-01 (4th Cir. 2013).

Second, the inmate must show that the medical staff subjectively knew of, but

were deliberately indifferent to, "an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837; *Wilson v. Seiter,* 501 U.S. 294, 297–99 (1991). Medical negligence is not a constitutional violation. *Estelle,* 429 U.S. at 106; *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975). To establish that a prison official's actions constitute deliberate indifference to a serious medical need, "the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990).

Legg claims that an employee of Prime Care provided him with sulfa medications and Benadryl, causing Legg to have an adverse drug reaction. Legg's allegations regarding his drug allergy and allergic reaction are simply too vague and factually unsupported to state a claim. While Legg provides the names of the personnel who supposedly knew of his allergy, he does not provide any details regarding how the events unfolded. From the allegations in the complaint, it is just as plausible that the Prime Care personnel were not made aware of Legg's allergy until after the medications were administered as it is that the medications were given despite knowledge of Legg's history of allergies. Furthermore, even if a medication error occurred, Legg does not include enough allegations for the Court to infer that the medical providers acted with deliberate indifference as opposed to medical negligence. Lastly, Legg does not provide any facts indicating that he suffered physical harm as a consequence of the alleged drug reaction. His statement that "he would have died" is not sufficient to describe a physical injury under this factual circumstance. Therefore, the undersigned **FINDS** that Legg's complaint fails to state a *prima facie* case against any the medical providers employed by Prime Care.

In view of Legg's failure to state a plausible and viable claim against any of the

named defendants, the undersigned **FINDS** that the complaint should be dismissed. However, given that the statute of limitations has not expired, the dismissal should be without prejudice.

### B.  The Motion Granting Full Immunity is not Properly Asserted in a § 1983 Complaint

In his Motion, Legg asks the Court to grant him immunity and release him from state custody. The undersigned **FINDS** that his Motion must be **DENIED**, because Legg is not entitled to that form of relief in this action. A civil rights complaint is not a substitute for direct appeal or habeas review. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody."). The law is clear that a petition for a writ of habeas corpus—not a complaint under § 1983—is the exclusive remedy for a state prisoner who seeks immediate or speedier release from detention. *Heck*, 512 U.S. at 481; *Johnson v. Ozmint*, 567 F. Supp.2d 806, 823 (D.S.C. 2008) (holding that release from prison is not a result obtainable in a § 1983 action).

In addition, Legg's claim involves a pending state court criminal proceeding. A federal court may intervene in a state's pending criminal action only "in the most narrow

and extraordinary of circumstances." *Gilliam v. Foster,* 75 F.3d 881, 903 (4th Cir. 1996).
In most cases, "national policy [forbids] federal courts to stay or enjoin pending state
court proceedings," thus allowing state courts the freedom to determine matters of state
law, vindicate important state interests, and address constitutional concerns without
interference from federal courts, except when plainly necessary to address a situation of
immediate and irreparable injury. *Younger v. Harris,* 401 U.S. 37, 41). The United States
Court of Appeals for the Fourth Circuit ("Fourth Circuit") explained:

> What lies behind *Younger,* of course, is a broader rule of comity: namely,
> that federal courts should abstain from the decision of constitutional
> challenges to state action, however meritorious the complaint may be,
> "whenever [the] federal claims have been or could be presented in ongoing
> state judicial proceedings that concern important state interests."

*Cinema Blue of Charlotte, Inc.,* 887 F.2d 49, 52 (4th Cir.1989). Simply stated, "federal
courts should permit state courts to try state cases" given that federal constitutional
claims can be addressed in state court, and "state court judges are fully competent to
handle them subject to Supreme Court review." *Bonner v. Circuit Court of City of St.
Louis,* 526 F.2d 1331, 1336 (8th Cir. 1975). Legg fails to demonstrate extraordinary
circumstances that would justify this Court's interference in his ongoing state criminal
proceedings; therefore, his motion must be denied.

## IV.    Proposal and Recommendation

Accordingly, for the stated reasons, the undersigned respectfully **PROPOSES**
that the presiding District Judge confirm and accept the foregoing findings and
**RECOMMENDS** that the presiding District Judge **DENY** the Motion Granting Full
Immunity, (ECF No. 15); **DISMISS** the complaint, without prejudice**,** and **REMOVE**
this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendation" is hereby

**FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff.

**DATED**: March 4, 2021

Cheryl A. Eifert
United States Magistrate Judge